UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| BRADLEY SEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. |
| | ) | |
| STEUBEN COUNTY SHERIFF TIM R. TROYER, ADAM CRALL, ERIC PATTERSON, and JEREMY MUSSER, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

# COMPLAINT

Plaintiff, Bradley Seman, by counsel, alleges against the Defendants as follows:

1. The Plaintiff is Bradley Seman, a resident of Indiana at all material times to the Complaint.

2. Defendants Steuben County Sheriff Tim R. Troyer is sued in his representative capacity under the tort laws of Indiana and were responsible for the actions of his employees as set forth below.

3. Officers Adam Crall and Sergeant Eric Patterson are Steuben County Police Officers and are named in their individual capacities as police officers pursuant to 42 U.S.C. § 1983. At all material times to this Complaint, Officers Crall and Sergeant Eric Patterson were acting within the scope of their employment and under color of law when they subjected the Plaintiff to an unreasonable search and seizure of his person, false arrest, and false imprisonment. In doing so, the Defendants acted in violation of the Plaintiff's rights under the Fourth Amendment to the United States Constitution, 42 U.S.C. § 1983, and in violation of the laws and public policies of the State of Indiana.

1

4. Jeremy Musser is sued in his individual capacity as acting in his individual capacity under color of law as a law enforcement officer (outside the scope of his duties as a prosecutor) and investigating and directing the arrest of Plaintiff on April 6, 2016.

5. The Plaintiff issued a Notice of Tort Claim on July 12, 2016, a copy of which is attached hereto, and incorporated herein as Exhibit "A". All administrative remedies have been exhausted, and jurisdictional prerequisites have been met for the filing of this suit.

## Background

6. Plaintiff and his ex-girlfriend, Jennifer Barnes, started dating on June 5, 2014.

7. On or about June 20, 2014, Ms. Barnes requested that the Plaintiff sell some of her jewelry.

8. In the fall of 2014, Plaintiff and Ms. Barnes began staying at his grandmother's lake home at 80 West Clear Lake Drive, Fremont, IN 46737.

9. On October 7, 2014, Ms. Barnes had an elective medical procedure performed by Dr. Mark Mandell-Brown of Montgomery, Ohio. Plaintiff attended follow-up appointments and discussed her care with Dr. Mandell-Brown.

10. On October 9, 2014, Dr. Mandell-Brown determined that one of Ms. Barnes' sutures had come out. Plaintiff was instructed by Dr. Mandell-Brown to treat the wound with antiseptic and gauze. An infection began to develop.

11. On October 12, 2014, Ms. Barnes bought Plaintiff's grandmother's (Delphine Seman) lake home for Plaintiff for $200,000.00. Ms. Barnes explains to Plaintiff that, "this is your house and I want to give this to you." Ms. Barnes specifically requested to be left off the deed to the home.

12. On October 23, 2014, while at the lake home, Ms. Barnes instigated an altercation with

Plaintiff. Ms. Barnes became belligerently drunk and Plaintiff was forced to call the police. Ms. Barnes heard the Plaintiff calling the police and ran next door yelling that she was "being beat." The police arrived and Ms. Barnes attempted to flee the scene by driving away. She was stopped and removed from the property and taken to a nearby hotel to become sober.

13. In early November, 2014, Ms. Barnes' infection from the elective medical procedure continued to progress.

14. On November 7, 2014, a deed was executed which transferred the property at 80 West Clear Lake Drive, Fremont, IN 46737 to Plaintiff solely. Ms. Barnes' name was not placed on the deed, per her request. Ms. Barnes had no ownership in the home.

15. On December 8-9, 2014, Ms. Barnes' infection progressed and she alerted Plaintiff to the pain she was feeling.

16. On December 10, 2014, Ms. Barnes went to DuPont Hospital where doctors determine that she had a severe MRSA infection.

17. On December 11, 2014, Ms. Barnes called Plaintiff to complain of serious pain at the infection site. Plaintiff tried to take Ms. Barnes to the hospital, but she, once again, was drunk, combative, and began yelling. Hearing the commotion, a neighbor called the police.

18. Officers arrived on the scene and immediately placed Plaintiff in handcuffs. Plaintiff calmly explained the situation, Ms. Barnes' infection, and intoxication.

19. Sergeant Todd Patterson was unwilling to investigate the situation and simply instructed the Steuben Sheriff deputy to take Plaintiff into custody. Plaintiff was charged with domestic battery.

20. On December 12, 2014, a no contact order was put into place between Plaintiff and Ms. Barnes. This order was based on false information provided by Ms. Barnes that Plaintiff had battered her. Plaintiff had never battered Ms. Barnes.

21. Ms. Barnes called Plaintiff to inform him that the no contact order was based on a misunderstanding and she would have it removed.

22. On December 15, 2014, Plaintiff attended Ms. Barnes' corrective surgery and stayed with her at the Hampton Inn in Steuben County, IN while she recovered.

23. On January 14, 2015, Ms. Barnes entered Plaintiff's lake property. Plaintiff asks Ms. Barnes to leave, but she refused.

24. At that point, Ms. Barnes became combative and injured Plaintiff. Plaintiff was forced to leave his home and flagged down Officer Kitson from the Fremont Police Department. Plaintiff requests Officer Kitson to transport him to the hospital to have his injuries treated. Officer Kitson says that, "I cannot have someone bleeding all over the back of my car." Officer Kitson calls an ambulance instead.

25. Officer Kitson then advised Plaintiff that an officer was going to his lake property. Officer Kitson threatened Plaintiff that if Ms. Barnes "story" was different from his, then he would be placed under arrest and charged with invasion of privacy. Plaintiff was in fact arrested and taken to jail.

26. On January 15, 2015, Ms. Barnes bonded Plaintiff out of jail. Plaintiff left the jail and returned to the Hampton Inn in Steuben County, IN. At about 11:00 PM, Officer Kitson and several other officers arrive at Plaintiff's hotel room. The officers informed Plaintiff that his bond has been revoked and they took him into custody.

27. On March 16, 2015, Plaintiff's pending domestic battery charges are dismissed when the

judge hearing the case acknowledges that the lake property is, in fact, in Plaintiff's name.

28. On March 23, 2015, a new invasion of privacy charge is brought against Plaintiff after the prosecutor learns that Plaintiff and Ms. Barnes spoke on the phone while Plaintiff was incarcerated and a no contact order was in place.

29. Plaintiff was encouraged by his attorney to plead guilty to the invasion of privacy charges because Ms. Barnes did not give the attorney enough money to proceed to trial. Plaintiff did plead guilty.

30. On April 1, 2015, Plaintiff paid an attorney to have Ms. Barnes evicted from the lake property. The attorney failed in his efforts to evict Ms. Barnes.

31. On April 27, 2015, Plaintiff was sentenced to one year in prison for invasion of privacy.

32. On August 12, 2015, Plaintiff left the Steuben County Jail and tried to return to his lake home. He was unable to return to his home because Ms. Barnes had barricaded herself inside his home and would not come out. Plaintiff also learned that Ms. Barnes had stolen his jeep and trailer.

33. On August 13, 2015, Plaintiff attempted to file a police report with the Steuben County Sheriff's Department regarding his stolen jeep and trailer. Deputy Rich McCarty took the information. However, Prosecutor Jeremy Musser refused to bring charges against Ms. Barnes and referred to the issue as a "civil matter."

34. On August 14, 2015, Plaintiff was contacted by Chief Deputy Robinson of the Steuben County Sheriff's Department, who informed him that the no contact order that had been in place had expired. Plaintiff and Officer Rich McCarty proceed to the lake home. Because Ms. Barnes changed the locks without authorization or permission, Plaintiff broke a window in order to enter.

35. Plaintiff entered the home with Officer Rich McCarty. Ms. Barnes was in the home. Ms. Barnes saw the Plaintiff and started screaming. Officer McCarty then told Plaintiff he had to leave.

36. Later that night, Plaintiff was served with a temporary protective order from Ms. Barnes.

37. Plaintiff again requested an attorney to proceed with the eviction of Ms. Barnes, because she had no possessory interest in the home and was essentially a squatter.

38. On September 3, 2015, Plaintiff had a hearing at the Steuben County Courthouse which he hoped would allow him back in his home. Plaintiff's attorney and Defendant's attorney left the courtroom to speak privately with the judge. Plaintiff was left with Ms. Barnes and her new boyfriend alone in the courtroom. Ms. Barnes began to say rude things to Plaintiff while he remain silent and did not look at her, because there was still a protective order in place.

39. Eventually, Plaintiff's attorney re-enters the courtroom and advises Plaintiff to pay Ms. Barnes "a couple hundred thousand dollars" for his home. Plaintiff was shocked at the advice and proceeded to leave. However, before he could leave the Courthouse, a bailiff places him in handcuffs and advises him that he is being placed under arrest for invasion of privacy. Apparently, Ms. Barnes claims that Plaintiff had spoken to her in the Courtroom when he had not.

40. On September 18, 2015, Plaintiff attended a hearing on the temporary restraining order. The Order was put into place for two years. At the hearing, Plaintiff requested to be allowed back into his home to obtain paperwork to show that he was the owner of the home. The judge ordered Plaintiff to make a list of all the things in the home and give that list to Ms. Barnes. Ms. Barnes was then supposed to give those items to Plaintiff.

41. On November 2, 2015, Plaintiff appeared in court for the invasion of privacy charge. Plaintiff's court appointed attorney filed a continuance which was denied. The trial was set in three weeks' time.

42. On November 6, 2015, Plaintiff borrowed a friend's car and drove to the Steuben County Sheriff's Department to obtain a copy of a police report of Ms. Barnes' arrest at the request of his court appointed attorney.

43. While driving on the highway, Plaintiff saw Ms. Barnes' vehicle. Plaintiff immediately exited the highway and continued to the Sheriff's Department.

44. Upon entering the Sheriff's Department, a Deputy informed Plaintiff that Ms. Barnes saw him on the highway and filed a police report. She falsely claimed that Plaintiff was yelling and waving at her from his vehicle.

45. On November 17, 2015, invasion of privacy charges were again brought against the Plaintiff based upon the false accusations by Ms. Barnes made on November 6, 2015.

46. On November 30, 2015, a new eviction notice was filed against Ms. Barnes.

47. On February 28, 2016, there was an eviction hearing held and the judge did not evict Ms. Barnes despite the fact that she had no ownership interest in the property.

48. On March 7, 2016, Plaintiff's attorney encouraged him to plead guilty to a trespassing charge in order to have the invasion of privacy charges dismissed. Even though the invasion of privacy charges were all baseless and false, Plaintiff did plead guilty to the trespassing charge. He was sentenced to six months.

49. On March 25, 2016, Plaintiff was released from the Steuben County Jail.

## Count I

50. Plaintiff owned lake property at 80 West Clear Lake Drive, Fremont, IN 46737, solely in

his name.

51. Plaintiff's ex-girlfriend, Jennifer Barnes, had installed a security system in Plaintiff's home without his permission, even though she was not an owner of the property and had no interest in the home.

52. On April 6, 2016 at about 5:00 p.m., Plaintiff confirmed that Jennifer Barnes was not at the lake property. Neighbors explained that Ms. Barnes had not been at Plaintiff's home for approximately a month. Plaintiff proceeded to the home and entered through the garage. Because this set off the security alarm and apparently alerted Jennifer Barnes' phone, she contacted the Steuben County Sherriff's Department to assert there was "motion in the garage." Officer Adam Crall and Sergeant Patterson arrived. Plaintiff showed the officers proof that he owned the home in the form of a deed bearing only his name.

53. Officers remained at Plaintiff's home for approximately three hours to investigate.

54. After conferring with and being advised by Steuben County Prosecutor, Jeremy Musser, Plaintiff was arrested by Officer Crall without probable cause for alleged invasion of privacy. The arrest was directed by Prosecutor Jeremy Musser who investigated the matter and participated in the arrest of the Plaintiff without a warrant.

55. Plaintiff was vindicated of the false charge on April 11, 2017 when he prevailed on the merits and the charge was dismissed.

56. On April 24, 2016, Plaintiff learned that the Steuben County Sheriff's Department contacted a local locksmith, Larry's Locksmith, and requested that they change the locks to Plaintiff's home without due process and deprived him of his property without a hearing or an opportunity to be heard while Plaintiff was incarcerated.

57. Plaintiff alleges that Defendants are liable for false arrest, false imprisonment and unreasonable seizure in violation of the Plaintiff's rights under the Fourth Amendment to the United States Constitution, 42 U.S.C. § 1983, and in violation of the laws and public policies of the State of Indiana.

58. As stated above, all charges against Plaintiff were dismissed on April 11, 2017 after reviewing the facts and applicable law. There was neither a factual nor legal basis for the charges brought against Plaintiff for invasion of privacy. There was no probable cause and Plaintiff prevailed on the merits.

59. It was clearly established law at the time of the initiation of the charges and the detention and arrest of the Plaintiff that the Plaintiff was not invading Ms. Barnes' privacy. The charges against Plaintiff were baseless and constituted false arrest and malicious prosecution.

60. The Defendant Officers subjected Plaintiff to false arrest/false imprisonment, in violation of Plaintiff's right to be free from unreasonable seizure under the Fourth amendment to the United States Constitution, 42 U.S.C. § 1983 and the laws and public polices of the State of Indiana.

61. As a result of the unlawful arrest and detention of the Plaintiff, Plaintiff was subjected to a wrongful loss of freedom and liberty, inconvenience, malicious prosecution under the 14th Amendment to the Constitution, an accrual of attorney fees and costs, emotional distress, and other damages and injuries.

62. The conduct of the Defendants, and each of them, directly and proximately caused the Plaintiff to suffer a wrongful loss of freedom and liberty, inconvenience, mental anguish, emotional distress and other damages and injuries.

63. The conduct of the Defendants, and each of them, was intentional, knowing, willful, wanton, and in reckless disregard of the Plaintiff's federally protected rights, and of his rights under the tort laws of the state of Indiana. Imposition of punitive damages is warranted. Plaintiff also seeks compensatory damages.

WHEREFORE, the Plaintiff respectfully prays for judgment against the Defendants, and each of them, for compensatory damages, punitive damages (where available), reasonable attorney's fees and costs, and for all other just and proper relief in the premises.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

**CHRISTOPHER C. MYERS & ASSOCIATES**

/s/ Christopher C. Myers
Christopher C. Myers, #10043-02
809 South Calhoun Street, Suite 400
Fort Wayne, IN 46802-2307
Telephone: (260) 424-0600
Facsimile:   (260) 424-0712
Counsel for Plaintiff